IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| CAROLYN WINGATE | * | |
|     Plaintiff, | * | |
| v. | * | Civil Action No.: RDB-07-2923 |
| JOHNS HOPKINS BAYVIEW MEDICAL CENTER, INC., | * | |
| | * | |
|     Defendant. | | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

This employment discrimination action arises out of an Amended Complaint filed by Plaintiff Carolyn Wingate ("Wingate" or "Plaintiff") against her former employer, Defendant Johns Hopkins Bayview Medical Center, Inc. ("Bayview" or "Defendant"). Wingate's original Complaint included four counts all arising from her former employment at Bayview: I) retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*. ("Title VII"); II) retaliation in violation of 42 U.S.C. § 1981; III) disparate treatment in violation of Title VII and 42 U.S.C. § 1981; and IV) wrongful discharge. Wingate subsequently submitted a First Amended Complaint (Paper No. 9), which omitted the third and fourth counts, disparate treatment and wrongful discharge respectively. Plaintiff then submitted a Motion for Leave to File a Second Amended Complaint (Paper No. 18) to reinstate the third and fourth counts. By Order dated July 10, 2008 (Paper No. 22), this Court granted Wingate's Motion to Amend and Reinstate Count III, disparate treatment, but denied Wingate's Motion to Amend and Reinstate Count IV, wrongful discharge. Thus, Counts I, II and III of Plaintiff's Second Amended Complaint remain before this Court. Currently pending is Bayview's Motion for Summary

Judgment (Paper No. 29) as to these three claims.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331.  The parties' submissions have been reviewed and no hearing is necessary.  *See* Local Rule 105.6 (D. Md. 2008).  For the reasons that follow, Defendant Bayview's Motion for Summary Judgment is GRANTED.

## **BACKGROUND**

As the nonmoving party, the facts are viewed in a light most favorable to the plaintiff.  Plaintiff Carolyn Wingate is an African-American woman who was employed as a House Keeping Aide in the environmental services department by Defendant Johns Hopkins Bayview Medical Center, Inc. beginning in December of 2000.  (Def.'s Mem. Summ. J. Ex. 1; Wingate Depo. at 13-14.)  As a House Keeping Aide, Wingate's main responsibility was to maintain sanitary conditions in Bayview's patient areas.  (Wingate Depo. at 13-14.)  Wingate received generally favorable reviews for her work throughout her years of employment at Bayview.  (Pl.'s Mem. Opp'n Summ. J. at 3.)  However, each of Wingate's performance evaluations for 2002, 2003 and 2004 made reference to an issue that is central to this dispute: Wingate's tendency to leave her assigned work area while on duty.  (Def.'s Mem. Supp. Summ. J. at 3.)  On July 12, 2007, Wingate submitted her resignation while she was suspended pending investigation of her difficulty in remaining in her work area.

The chain of events that eventually led to Wingate's suspension began in early May 2007, when she was asked to mop a slick portion of the emergency department floor.  (Wingate Depo. at 112-15.)  Despite her mopping, the floor apparently remained slick.  (*Id*.)  At some point thereafter, other Bayview employees slid across the floor and laughed, which Wingate interpreted as discriminatory.  (*Id*.)  She complained to Human Resources about this episode.  (*Id*. at 119.)  On or about May 22, 2007, Wingate spoke with Robert Gair, the director of

Bayview's environmental services department, about this incident. (*Id*.) Dissatisfied with Gair's response, Wingate approached Joseph Shafferbein, a shop steward for Wingate's union, AFSCME Local 3374, who suggested she draft and circulate a petition delineating her grievances. (*Id*. at 35-36.) The petition Wingate drafted details a number of issues she believed the members of the union felt needed to be addressed. (Mem. Supp. S.J. Ex. 3 at ¶1.) These issues included that members of the union "get treated unfairly by other staffing members that are not in our department because we work beneath their standards," that "[m]any of us are confused and oppressed because we feel as though we do not have no support from our own management department," and that "as a group, we need a cost of living wage." (Mem. Supp. S.J. Ex. 3.) Although Wingate mentions unfair treatment in this petition, it makes no reference to race. (*Id*.) Additionally, Wingate agreed at deposition that the purpose of the petition was to "get a new union." (Wingate Depo. at 45.)

Wingate has admitted that from June 14, 2007 to June 28, 2007, despite the critiques in her annual reviews, she repeatedly left her work area to collect signatures for her petition and distribute EEOC forms to other Hopkins employees. (*Id*. at 17-19; 289-90; 306.) Wingate was aware that she was not supposed to leave her work area since employees in her department were regularly reminded of this requirement during department meetings. (Wingate Depo. at 18-19.) Furthermore, on June 16, 2007, Wingate received a written warning for being outside of her work area when she was found in another department taking leftover food from a nurse's break room. (Wingate Depo. at 29-30.)

On June 21, 2007, Wingate gave Gair a copy of her petition, which had over 72 signatures at this point. (Second Am. Compl. ¶ 11; Wingate Depo. at 134.) On June 28, 2007, Wingate yet again left her area while on duty to give a coworker an EEOC complaint form.

3

(Wingate Depo. at 234-36.)  After doing so, she was approached by two supervisors, Harry Mathews ("Mathews") and Ronald Hart ("Hart").  (*Id*.)  Mathews and Hart asked to see the form she was distributing, but otherwise took no action at this time.  (*Id*.)  Later that afternoon, Gair saw Wingate circulating her petition outside the hospital's gift shop, which is located in a different building than the work area where she was assigned.  (*Id*. at 234-36; 27-28.)  After consulting with Bayview's Human Resources department, Gair suspended Wingate pending an investigation of this incident and the extent of her repeated departures from her work area.  (*Id*. at 246.)  On July 12, 2007, Wingate submitted her resignation while she was suspended and before the investigation was completed.  (*Id*. at 14-15, 17-19, 29-30.)  Wingate's resignation stated that she was on a "path of following my dreams" and that it was "time for me to follow my calling."  (Def.'s Mem. Supp. Summ. J. Ex. 1.)

On August 7, 2007, Hopkins sent her a letter indicating that under the terms of her employment contract, she was now obligated to return to Hopkins the amount of tuition reimbursement it had paid her during the last year of her employment.  (Pl.'s Opp'n Ex. 26.)  Hopkins had reimbursed $5,000 of Wingate's tuition fees, but requested she repay a lesser portion of the loan amounting to $4,183.  (*Id*.)  On May 22, 2008, after she defaulted on the loan, the Johns Hopkins Federal Credit Union repossessed Wingate's car and applied the proceeds of the sale of her car towards her loan.  (Pl.'s Opp'n Ex. 27.)  Wingate also alleges that Hopkins blocked her unemployment insurance benefit application.  (Pl.'s Opp'n at 10.)

After filing a charge with the EEOC, Wingate initiated this action by filing a Complaint on October 26, 2007.  Wingate filed her First Amended Complaint (Paper No. 9) on January 17, 2008, and filed a Motion for Leave to Amend (Paper No. 18) on May 2, 2008.  On March 3, 2009, Bayview filed the pending Motion for Summary Judgment (Paper No. 29).  On March 21,

2009, Wingate filed her Response in Opposition (Paper No. 32). On April 3, 2009, Bayview filed its Reply (Paper No. 33).

## STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *Id*. at 249.

In undertaking this inquiry, a court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). After the moving party has established the absence of a genuine issue of material fact, the nonmoving party must present evidence in the record demonstrating an issue of fact to be resolved at trial. *Pension Ben. Guar. Corp. v. Beverley*, 404 F.3d 243, 246-47 (4th Cir. 2005) (citing *Pine Ridge Coal Co. v. Local 8377, UMW,* 187 F.3d 415, 422 (4th Cir. 1999)). Summary judgment will be granted if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

This Court has an affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993) (quoting *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987)). If the evidence presented by the nonmoving party is merely colorable, or is not significantly probative, summary judgment must be granted. *Anderson*, 477 U.S. at 249-50. This Court has previously explained that a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala,* 166 F. Supp. 2d 373, 375 (D. Md. 2001) (citations omitted).

## ANALYSIS

A plaintiff may survive a motion for summary judgment filed by the defendant employer in one of two ways: "(1) by offering direct evidence of discrimination under the ordinary standards of proof, or (2) under the system of shifting evidentiary burdens established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Garrow v. Economos Props., Inc*., 242 Fed. Appx. 68, 70 (4th Cir. 2007).

The primary direct evidence Wingate offers in support of her claims is a comment made by Robert Gair, the head of Bayview's environmental services department, after suspending Wingate: "[Wingate was] handing out EEOC petitions and I was concerned about that." [1] (Pl.'s Opp'n at 13.) However, Gair's comment was made in the context of his repeatedly explaining that his reason for suspending Wingate was "about her being out of her area" during her workday, not about her handing out EEOC forms. (Pl.'s Opp'n Ex 15. at 17.) A brief look at Gair's testimony shows that this comment taken out of context does not suffice to prove direct evidence of retaliation or disparate treatment. Because Wingate has not established any direct

---

[1] Wingate alleges that Bayview admitted she was suspended for handing out EEOC forms, but Wingate's evidence of this is merely two citations to the record that say nothing of the sort.

evidence of discriminatory intent, her claim is reviewed under the familiar three-step *McDonnell Douglas* burden-shifting model.

To satisfy *McDonnell Douglas*, Wingate must first present enough evidence to prove a *prima facie* case of discrimination.  *Reeves v. Sanderson Plumbing Products,* 530 U.S. 133, 142-43 (2000).  If she can do this, the burden then shifts to Bayview to produce evidence that the adverse employment action was taken against Wingate "for a legitimate, nondiscriminatory reason." *Id*. at 142 (*citing Tex. Dept. Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981)).  If Bayview provides a reason, the burden shifts back to Wingate to show that Bayview's reason is pretextual.  *Karpel v. Inova Health Sys. Servs*., 134 F.3d 1222, 1228 (4th Cir. 1998).

**I.     Counts I & II: Retaliation**

**A.     Prima Facie Case**

To establish a *prima facie* case of retaliation under Title VII, as alleged in Count I, and 42 U.S.C. 1981, as alleged in Count II, Wingate must show that: (1) she engaged in a protected activity; (2) Bayview took an adverse employment action against her; and (3) a causal connection exists between the protected activity and the adverse employment action.[2] *Haulbrook v. Michelin N. Am*., 252 F.3d 696, 706 (4th Cir. 2001).  Wingate satisfies the first element because she engaged in protected activity when she reported her concerns to Bayview's Human Resources department that the May 4, 2007 mopping incident involved discriminatory *animus.*  Wingate contends that leaving her work area to hand out EEOC forms during her

---

[2]  This Court has held that "[t]he opinions of the U.S. Court of Appeals for the Fourth Circuit … clearly establish that the Title VII and Section 1981 analysis for retaliation are the same." *Wang v. Metro. Life Ins. Co.,* 334 F. Supp. 2d 853, 869 (D. Md. 2004) (internal citations omitted); *see also James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 376 (4th Cir. 2004) (establishing that the Title VII and Section 1981 analysis are the same in a race discrimination claim). Bayview does not appear to challenge whether Wingate has established a *prima facie* case of retaliation.

workday is protected activity. It is not. *See Zhenlu Zhang v. Sci. & Tech. Corp.*, 382 F. Supp. 2d 761, 775 (D. Md. 2005) ("While an employee may not suffer retaliation for protected activity, either participating in a proceeding or opposing unlawful employment discrimination, the employee's own conduct must not be disruptive of the employer's business."). Wingate's suspension constitutes an adverse action, thus satisfying the second element. *Jeffers v. Thompson*, 264 F. Supp. 2d 314, 330 (D. Md. 2003) ("A suspension from pay and duty clearly amounts to an actionable employment action."). Finally, the temporal proximity between Wingate's suspension and her complaint to Human Resources about the mopping incident establishes the third element, that there was a causal connection.[3] *See Williams v. Cerberonics, Inc.,* 871 F.2d 452, 457 (4th Cir. 1989) (finding that temporal proximity between protected activity and an adverse employment action is sufficient evidence to establish a causal connection between the protected action and the adverse employment action); *Barnes v. Fair Lanes*, 1996 U.S. Dist. LEXIS 9966 (D. Md. July 16, 1996) (finding a three month time span between filing EEOC charges and termination establishes a casual connection). Since Wingate has established a *prima facie* case of retaliation under Title VII and 42 U.S.C. § 1981, the burden shifts to Bayview to prove its reason for disciplining her was not discriminatory.

### B. Legitimate, Non-Discriminatory Reason

Bayview has produced evidence that Wingate was suspended for a legitimate, nondiscriminatory reason. Bayview has shown that Wingate was suspended because she repeatedly left her work area while on duty, which was consistently an issue throughout Wingate's employment. The record shows that Wingate has been repeatedly critiqued for

---

[3] Wingate complained to Human Resources about the mopping incident on May 22, 2007. She was suspended just over one month later, on June 28, 2007.

leaving her assigned area over the years and that she was warned that such behavior was unacceptable. While all of Wingate's 2002, 2003 and 2004 performance reviews are generally positive, each makes reference to this continuing problem. Furthermore, Wingate admits that all of Bayview's environmental services employees were reminded of the importance of staying in their work areas during their regular department meetings. Additionally, on June 16, 2007, just twelve days before her suspension, Wingate was issued a written warning for being out of her area when she was found taking food from a nurse's break room.

Bayview had ample reason to suspend Wingate for continually flouting one of her primary job responsibilities – to be where she was supposed to be. The Fourth Circuit has made clear that, "An EEOC complaint creates no right on the part of an employee to miss work, fail to perform assigned work, or leave without notice." *Glover v. South Carolina Law Enforcement Div.*, 170 F.3d 411, 414 (4th Cir. 1999). Wingate does not dispute that she was suspended on June 28, 2007 after being found in an entirely different building than the one she was assigned to. Given the undisputed facts, Bayview has established a legitimate, nondiscriminatory reason for suspending Wingate, thus the burden shifts back to her to show that Bayview's reason is a pretext for discrimination.

### C. Pretext

Although Wingate asserts numerous reasons why Bayview's basis for suspending her is pretextual, she produces no credible evidence in support of her arguments. For example, Wingate states that Bayview's rationale for her suspension was pretextual because she received positive comments on her 2002, 2003 and 2004 performance evaluations. But as discussed above, every evaluation mentioned Wingate's problem with staying in her assigned area. Wingate also argues that she was never disciplined for leaving her work area until she began

9

distributing EEOC forms on June 28, 2007. This contention is simply not accurate, as she was issued a written warning for leaving her area on June 16, 2007, when she was seen in another department taking leftover food.

Thus, even viewing the facts in the light most favorable to the plaintiff, this Court finds that Bayview has produced a legitimate, nondiscriminatory reason for suspending Wingate, and that Wingate has not presented sufficient evidence for a reasonable jury to conclude that Bayview's reason for suspending her was a pretext for discrimination. Accordingly, Plaintiff Wingate's retaliation claims under Title VII and 42 U.S.C. § 1981 fail as a matter of law, and Defendant Bayview is entitled to summary judgment as to Counts I and II.

## II.     Count III: Disparate Treatment

To establish a *prima facie* case of disparate treatment in violation of Title VII and 42 U.S.C. § 1981, Wingate must show that: (1) she is a member of a protected class; (2) she was subjected to an adverse employment action; and (3) similarly situated employees not in the same protected class were not subjected to any adverse action. *See, e.g., Carter v. Ball,* 33 F.3d 450, 461 (4th Cir. 1994). Wingate satisfies the first element because she is African-American and thus a member of a protected class. As mentioned above, Wingate satisfies the second element because a suspension constitutes an adverse action.

However, Wingate cannot establish a *prima facie* case of disparate treatment because she has produced no evidence to support the third element, that similarly situated employees outside of her protected class were treated differently. *See Sterling v. Tenet*, 416 F.3d 338, 345 (4th Cir. 2005) (recognizing that, to establish *prima facie* case, a plaintiff must "raise an inference of discriminatory intent by showing that she was treated worse than similarly situated employees of other races"). Wingate has named no employee who left his or her work area without being

disciplined. The only reference Wingate makes to this topic are the self-serving statements that "Plaintiff have [sic] put forward unrefuted corroborated evidence" that other employees left their work areas without repercussion, and that Bayview "singled out Plaintiff's protected activities outside of her assigned work area." (Pl.'s Opp'n at 25.) Since Wingate has not produced any convincing evidence that she was singled out or that similarly situated individuals were disciplined differently than she was, she cannot make a *prima facie* case of disparate treatment.

Even if Wingate had established a *prima facie* case of disparate treatment, as explained above, Wingate has offered no evidence to show Bayview's legitimate, nondiscriminatory reasons for suspending her were a pretext for discrimination. Thus, even viewing the facts in the light most favorable to the plaintiff, this Court finds that Wingate has not presented evidence sufficient for a reasonable jury to conclude that Bayview's reason for suspending her was a pretext for discrimination. Accordingly, Plaintiff Wingate's disparate treatment claim under Title VII fails as a matter of law and Defendant Bayview is entitled to summary judgment as to Count III.

For the reasons stated above, Bayview's Motion for Summary Judgment (Paper No. 29) is GRANTED.

A separate Order follows.


Dated: November 6, 2009                    /s/_____
                                           Richard D. Bennett
                                           United States District Judge